Miss Conrad, we're ready as soon as you can be ready. Good morning. Welcome. Good morning. Please proceed. May it please the court. The trial court below aired when it failed to give proper deference to the Bureau of Justice Assistance's longstanding understanding of the PSOBA as only applying to law enforcement officers with actual authority to compel adherence to the criminal law. Instead, the trial court followed the earlier case. Let me interrupt you because I'm having a lot of trouble with all these phrases being thrown around. When you say actual authority, what do you mean? I mean a combination of the things that were discussed in the earlier case. Let's take the combination apart so we can see how it actually works. Certainly. Before you were talking about not only statutory authority, but also actual duties given to the law enforcement officers by their superiors. Both things have to be taken under consideration. Not only statutory authority, but whether the superior actually gave them the ability to fight crime with... When? Gave them the ability to fight crime when? When they began their position. When they were appointed. When they were appointed. Yes, that's correct. So it's not a question of day-to-day assignments. It's a question of the terms of the appointment, the job description, if you will. That's correct, Your Honor. And that is something the Bureau of Justice Assistance has consistently looked at in these cases, is whether they have been making arrests, carrying a firearm, law enforcement certification, law enforcement training. And the trial court erred when it found that all a public safety officer had to do in order to qualify was to enforce the public safety laws or civil laws in general. Well, let me ask you this. Did Mrs. Casella have by the terms of her appointment all traffic and vehicle safety laws? Well, the actual statute just says she's vested with all powers of law. No, no, no. I'm not talking about what the statute says. When she was appointed by the chief of police in Weirton, West Virginia, were the terms of her appointment that she was to not only help kids cross the street to the school, but also to enforce vehicle and traffic type laws? No, because he gave her no ability to do so by making arrests or detaining suspects or carrying a firearm. Why do you say that? Because that's the testimony in the record. Well, let me ask you this hypothetically. Suppose that the school, immediate school vicinity is posted that when school's in session, 10 miles an hour is maximum speed. And I'm driving through this neighborhood and I'm careless and I'm driving 20. Does Mrs. Casella have the authority to stop me and take some action because I'm violating the speed limit in the school zone? Yes or no? No. How do you know that? Because that was the testimony in the record that all she could do is report that to other police officers who would take action. I didn't say shoot somebody. I didn't say ram my car. I said she tries to pull me over. She signals me to stop at the curb because she sees I'm going 20 in a 10 mile hour zone. Is she acting ultra virys when she pulls me over the curb with a hand motion or not? She could signal you to stop. She had a stop sign and had... Well, then isn't she enforcing a criminal law if speeding in a school zone is a petty criminal offense? No, that's just traffic control. Well, maybe it's both traffic control and enforcing a petty offense. Well, she clearly had the authority to stop cars so that children could cross the street. That's correct. That's different from whether she would have the authority to stop a car that she thought was going too fast. Isn't that what was testified to below as she could call up and say, I saw this very distinguished man in this snappy looking sports car. He was wearing a black Yes, that's correct, Your Honor. That she could, she had what they called indirect arrest authority, but really is no different than the average person reporting an offense that they've seen to their superior or to a police officer. And then regular police officers on the police department could go and arrest the individual or investigate. What did the chief testify about this so-called indirect arrest authority? Basically what I just said that it was she could report crimes that she observed to her superior or to other police officers on the police force. And they would do what? And they would take action against the person either by investigating or arrest. Well, it's kind of important. If an ordinary citizen says to a police officer, I know a crime happened that might or might not be accepted by the police officer. If a school crossing guard like Mrs. Casella reports to a regular uniformed patrolman that I know a crime happened because I saw it, he might consider her word authoritative because she's part of the police department. She's under supervision, discipline, some level of training. And in that sense, she might have authority or credibility quite different from an unknown citizen who stops a policeman on a street corner and says, I know a crime happened. I think whether her recommendation carries more weight does not go to the point of whether she's a criminal law enforcement officer or not. Could be the officer's mother-in-law who said, I saw that car speeding. That's correct. And that would be incredible. But if it was his mother, that would be incredible. Yes, your honor. I mean, different people, a school principal could report that he saw a car speeding and his report would also have certain amount of authority. You argue in your brief that the school principal could stop the traffic. Are you sure you can sustain that? Well, a school principal could get out and direct traffic in front of a school. With authority or just in the hope that people would cooperate? That's correct. Without authority. He wouldn't have the statutory authority, that's correct. Well, there's no other kind, is there? I mean, Mrs. Casella could direct traffic and people were obligated to follow her hand signals, her use of the stop sign she was equipped with and so forth. If the school principal used hand signals, people could use hand signals in return of a different sort, I suppose. Yes, your honor. So there's a difference then between Mrs. Casella directing traffic and the school principal or somebody's relative directing traffic? Well, I believe I used the example in my brief as an example about her presence was because Mr. Casella argues that her presence alone was sufficient to deter crime. But presence alone is not something the BJA has consistently looked toward to whether that is actual criminal law enforcement. Did you consider it crucial to Judge Futte's ruling in this case that he struck down the regulations? You mean both the law of duty and law enforcement? Yes, plural, regulations. Right, he struck down both of them. Yes. Yes, I mean, he did that though based on his erroneous interpretation of the statute. Well, I haven't gotten to that yet. So your view is if the regs stand, the government wins, no question? Yes. Do you equally agree that if the regs are struck down, the government loses, no question? Both regulations? I think it would depend on what the, why the reason. Depends on what replaces them. Yes, exactly. I mean, if it was just, if it was, if this court follows the interpretation of the trial court that includes all people that enforce civil laws in general, then I think Mrs. Casella would fall under that definition. Let me ask you a hypothetical. As I recall, the Securities Exchange Commission has a huge enforcement division of attorneys and all sorts of other people. It's my recollection that they enforce civil laws having to do with securities. Under the rationale of the two trial judges in these two cases, or just limited to your case, under Judge Futte's rationale, wouldn't the Securities Exchange Commission staff have to be considered law enforcement officers and recover these benefits if killed? Yes, I believe that's true. How about IRS revenue agents? Not the criminal investigators, but revenue agents in the IRS. There are thousands and thousands and thousands of them all over the country. If they're enforcing the civil laws? They're enforcing civil laws every day. And then they're just acting and doing whatever they're supposed to do for each other. How about meat inspectors for the Department of Agriculture? Thousands and thousands of them. Yes. They'd also be covered by this Law Enforcement Benefit Act if enforcing civil-only laws carries the day. Yes. I think it's also important to note in this case that Mrs. Casella's position as a special school zone police officer did not even fall under the West Virginia statute of law enforcement officer, or their statute member of a paid police department, because she was specifically excluded. How does that help you? Because that's something that BJA would consider as an important consideration. That may be, but the question is whether this court should or even could look at West Virginia law to interpret a federal statute and the regulations alleged to be in conflict with that federal statute. Are you saying we should? Could and should? Well, that is something that the BJA has consistently been interpreting. I understand that, but I'm not asking about what the BJA does. I'm asking what this court should do, in your opinion. It's something that BJA has consistently done. It does provide guidance for whether or not someone has this actual authority to enforce the criminal law. And under West Virginia law, she did not have the law enforcement officer authority. Because what? Because she didn't carry a gun? She was a certified police officer. She didn't go through police academy training. She didn't have the power to make arrests, and she didn't carry a firearm or a communications device. What's the significance of the latter? Suppose she had carried a walkie-talkie. Would that change the result in the case? That alone, no. But it's something that's been used in the law enforcement. How many of those things would change the result in the case? Every individual circumstance has to be examined. But isn't the critical one the power to make arrests? That is definitely a critical one. A critical one? Yes. That would be necessary and sufficient. The others might be useful, but not sufficient. That would be correct. Do we know anything about her appointment? Assuming appointment has significance, the terms of her appointment, her job description? There is a brief job description in the record, but I don't believe there's anything about her appointment. What does the job description say? What light does it shed on our quandary here? I believe it describes her as her authority, and also it describes her as a crossing guard. It describes her as having indirect arrest authority, and that she didn't carry a firearm. It's very brief. Do you want to save the rest of your rebuttal time? Yes. Thank you kindly. Good morning. Good morning. Welcome to you. Thank you. Please help us out. Your Honor, my name is Gordon Lane. I'm with Lane & Young, and we represent Leonard Casella, the surviving spouse of Leonard Casella in this case. Before I go through my main points, I'd like to go ahead and address your last question. What were her actual job duties in terms of a description? We asked the police department if there was a job description per se, and were informed that there was no job description. Chief Michael Gordon at the hearing, however, testified, and it's in the record at page 74, what her job duties were. It was in response to a question as to whether she was involved in preventing or controlling or reducing crime or juvenile delinquency. He said that her responsibilities in the school zone, and that's where she is empowered with all the authority of a local police officer to control traffic. And he said certain traffic laws are criminal laws, and so she had the authority to control traffic. She also had the authority to intervene if there was any juvenile delinquency. What do you mean by intervene? Ask two kids to stop fighting or arrest the perpetrator or what? Well, under the law, Your Honor, she had full authority. The closest that Chief Gordon spoke to that was an example, and it's in the record at page 79, where another school zone police officer witnessed a parent physically abusing a child that the school zone police officer physically interfered and intervened and the parent, although it didn't say whether legal charges were filed, had to go through counseling and other actions. She didn't arrest the parent? The record didn't say that. Well, we know, though, that she didn't have arrest powers. Isn't that what the chief said? The chief... Is that a yes or a no? In one filing, he characterized her arrest authorities as indirect. Yes, you call up somebody who has the power to arrest and they come and make the arrest. That's correct. That's what she would have been directed. That's the same power you and I have. Well, I think it's different in this case, Your Honor. One, I'm not a member of a police department and paid by a police department. I don't have under law the authority to arrest, whereas a school zone police officer has the authority to arrest. I like to think of the example... Now you're doubling back. I thought you agreed that while the statute might give all... I'm going to call her a school crossing guard. I know that's not the proper statutory title. Arrest and other police-like authority, that her actual delegation of duties by the Weirton police chief was far short of that. I thought you agreed earlier that what controls is the actual assignment by the chief, not the words in the state statute. Are you backtracking now? I guess if I relay that, then I didn't mean to and perhaps I am backtracking. One is she had full authority under law. Even if he tells her don't make any arrests under any circumstances, Mrs. Casella, you are not to make arrests. You don't have the power to make arrests because I'm not giving you that power even though the statute says you could have that power if I did give it to you. Your Honor, I think that you're getting back to the question of what's the difference between assigned duties and lawful duties. I would agree she did not have the authority. It's not lawful duties, it's permissible. Permissible duties then. She was not directed by the police chief to make arrests. So that was not part of her job duties or assignments. There is a difference though between a citizen and I think the example where a school zone police officer interfered with a parent abusing a child. Assume that for physically intervening a parent sued her that you have no business physically restraining me when I'm disciplining my child. Well, in a court of law, a judge would find she had all the authority of a local police officer in the school zone. And if it occurred in that school zone, then she had the authority. Chief Gordon testified that there's a continuum of force and rather than using some arbitrary test of making an arrest or fighting crime, the continuum of force talks about physical presence, verbal commands, third is chemical application, fourth is physical force. Was she equipped by Weirton Police Department with mace or any other such chemical? No, Your Honor. But in the case of the school zone officer that apprehended the parent abusing a child, that was the fourth continuum of force. That was physical force to protect a child. Let me ask you a different question. Are you arguing, among other arguments, I'm not trying to get you to abandon him, but are you arguing that by being present in uniform with her vest and her sign, etc., that she was controlling crime, the words of the statute, by being a visible deterrent against crime? I'd say that, coupled with her authority, she was a visible deterrent against crime. She also, I believe, did clearly have the authority to pull someone over, direct them off the road. How do we know that? Was that part of the testimony of the chief? No, what the chief testified with regard to Ms. Casella was that she could intervene in domestic violence, that she could intervene, and I interpreted that to be physically, in child abuse, intervene in juvenile delinquency. And what he said was she could go, and this is in page 74 of the record, she could go to continuum one and two, and two is holding up your hand or verbal, and he said, and probably go beyond. So she could go beyond and use a physical force which is a substantial authority and a high level of police authority. Mr. Lane, did anybody else testify about her assigned or delegated authority other than the police chief? No, the chief of police was the only witness. Was there any other witness in the proceeding? The only other witness was Mr. Casella, and he testified very briefly that he was a surviving spouse. But he didn't testify on the subject of what duties she was assigned or what power she was given by the police department or the other legal authorities in the city of Weirton? No, Your Honor, he did not. So the chief was the sole witness on the matters we're now asking you about? That's correct, Your Honor. And he appeared live? Yes, Your Honor, at the hearing. Not just by a deposition or affidavit or that sort of thing? No, he was there in person before the hearing examiner. Here in Washington? No, it was in Weirton, West Virginia where the accident occurred. Let me ask on the second part of the analysis, what was she actually doing at the time that she was struck? She had walked about four steps onto Pennsylvania Avenue and held up... Not this Pennsylvania. No, Your Honor, Pennsylvania Avenue in Weirton, West Virginia. And she was directing a school bus? Yes, she had held up a sign to stop traffic and was directing a school bus to come off of a side road onto the main road. Alright, thank you. Just another little detail, was she struck from behind or in front or on the side? One of the witnesses in the police report testified that she was hit on the side. It sounded like she was turning and when she went out she was facing a bus coming this way. She stopped the car coming in this direction and she was waving the bus out and Mr. Barrett just didn't see her and it's a 35 mile per hour road. Thank you. It sounded like it was in the side. So, Your Honor, to address... First, we believe that the test of actually making arrest is not a litmus test and is not really what the code and congressional statute speaks to. It speaks to involved in crime reduction or control or juvenile delinquency reduction and control. Mrs. Casella was clearly involved. She was a member of the police department. She had the authority of a police officer. Can we go back for just a moment? You were talking about Chief Gordon's testimony. Yes, Your Honor. I think you reported that he said she could be involved in juvenile delinquency and watchful for the children's welfare. Yes, Your Honor. But on cross-examination, didn't he back off of that so that he said that her power was limited to reporting her observations and he said she could not take immediate action on something that was not directly traffic related. Isn't that what he said? Well, that's a rhetorical question. I guess what I'm asking you is you reported his direct testimony and his cross-examination, it appears that he narrowed considerably. He didn't say that she had criminal or juvenile delinquency enforcement. He said that her power was limited to reporting her observations. She couldn't take immediate action on something that wasn't directly traffic related. Isn't that what he said? And if that's so, then wouldn't it be up to the hearing examiner to make a finding? And if that's supported by substantial evidence, isn't that what we review for here with respect to that finding? Your Honor, I believe when the Chief of Police was clear and may have retracted to a certain degree on cross, but he was clear that another school zone police officer had used physical force, that she could use physical force, and that she was able to take that action. Mr. Lane, do we have in the record the opinion of the hearing officer? Yes, Your Honor. There was a subsequent review by the head of the agency, as I recall. Do we have the decision letter or opinion equivalent of that adjudicator as well? Yes, Your Honor. Certainly Judge Ellis has to be the one to decide what the net truth, if you will, is. And we would have to look to see how those fact findings were articulated. And then, as he suggests, again, quite correctly, then the only question is whether such fact findings were supported by at least substantial evidence. If so, we're bound by those findings. So we'll look at the opinions. Thank you for clarifying what's there. What further? That's all, Your Honor. I would also add that in our view, even if this court would decide that a police officer or a law enforcement officer can enforce purely civil laws, it decides that that is not a proper ruling. We believe that our case still should be affirmed because she was enforcing traffic laws, juvenile delinquency, and that she died in the line of duty. So are you saying then that even assuming the regulations all stand, that the decision by the agency, hearing officer and agency head, has to be viewed as improper because it would be supported by less than substantial evidence or somehow tainted by a legal error or what? Well, what I would request, Your Honor, if you find that a law enforcement officer cannot be viewed as enforcing just civil laws, that you remand because the judge kind of quickly went to that decision without looking at other arguments. All right. Thank you, sir. Thank you. Ms. Conrad, you have about two minutes. Thank you, Your Honor. To address that last point first, a remand here is not necessary because there is sufficient findings in the record. These are legal conclusions to determine that she was not a law enforcement officer and was not killed in the line of duty. In other words, if criminal laws required, no reasonable fact finder could find that being a school crossing guard was enforcing the criminal laws. That's correct, Your Honor. And also, I'd like to note that the hearing officer correctly made several factual findings that after evaluating all the evidence that she had no arrest authority, she was given the title of school crossing guard and she was not a sworn or certified police officer, did not carry a firearm. I'd also like to note that Mrs. Casella had seven years of service with the Weirton Police Department and all evidence was that she served very honorably, but there was no evidence in the form of testimony from either Chief Gordon or any other kind of witness that she ever physically intervened in any case of alleged child abuse or juvenile delinquency. And it's been the consistent position of the BGA that the statute where it says involved in crime control or reduction enforcement of the laws, involved is more than just a minimal involvement. It's a... Where is the line? I mean, that's really what we have to decide. Where do you draw the line? Does it require making arrests and having delegated authority to make arrests or is it enough if you can intervene physically with pushing or punching or whatever it would be? Where's the line? The line has been, as consistently interpreted, has been actual authority to make arrests, to enforce the law by either carrying a firearm, some other type of weapon, to have law enforcement training and certification. All these are factors that are considered. What if she had been equipped with a typical police officer's wooden baton, I think is the correct term. No gun, no arrest authority, but a baton. Does that make a difference here? I think it would have to look at all the circumstances. Was she trained to use it? What was she to use it for? Was she to use it to detain people? Was it just a physical deterrent? I think everything needs to be considered in each individual case. Let me ask you this. The heart and soul of Congress's purpose here seems to be, at least as I interpret it, to incentivize people to go into law enforcement type occupations at all levels, federal, state, local, and so on, despite the physical dangers that many of those people incur on a regular basis, by providing them with the assurance that, in addition to whatever their immediate employing governmental authority may provide in the way of death benefits, that if killed they'll also get this federal fund that Congress has set aside. So I'm trying to figure out how does that reasonably apply to a school crossing guard? I mean, standing in the middle of a road is not entirely without some physical risks. Of course, it's not like shooting it out with some drug kingpin, of course. So again, on a spectrum, how much daily danger do I have to be exposed to in order to be within the spirit of this law as somebody who risks his or her life to some appreciable degree on a regular basis? Well, I think your interpretation of the purposes behind the statute is correct. In the legislative history they noted that the most dangerous thing that occurred for local law enforcement officers was making arrests, that more officers had been killed making careless drivers. If it's a lot, then maybe that's within Congress' purpose. But also, on another hypothetical, how many state transportation workers are killed by passing motorists? I mean, there are a lot of positions that put you in the line of vehicles and you have to do traffic enforcement. So just traffic enforcement is not enough. Wasn't there something in the legislative history suggesting protection of a police officer directing traffic? Yes, you're correct. And that was in the debate about whether to put in the line of duty, because the previous version of the bill required people to die or required the officers to have been killed as a result of a criminal act. So they changed it to line of duty. And part of the example they used was if a police officer is killed. And under the current, everything, all current standards, regulations. And that presupposed a police officer. Correct. With law enforcement authority. If a police officer with criminal law enforcement authority was killed, was assigned for the afternoon to direct traffic and was killed, he would be covered. In other words, if it's a police officer, it doesn't matter how they're killed, if they're on duty, they get benefits. That's correct. And that's because we want to attract people to become police officers. Absolutely. Alright. Thank you, Your Honor. We thank both counsel. We'll take this case under advisement.